[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This is an action for dissolution of marriage and other relief brought to the judicial district of Waterbury. Many of the facts that give rise to this action are not in dispute. The plaintiff, whose maiden name is Maria Abrandes, and the defendant were married in Carnaxide, Portugal on December 23, 1984. At least one of the parties has resided continuously for at least twelve months immediately prior to the date the complaint was filed. The marriage between the parties has broken down irretrievably without any reasonable prospects of reconciliation. There are three minor children issue of this marriage: Daniel Rego, born December 5, 1987, Robert Rego, born April 9, 1991, and Sergio Rego, born May 7, 1994. The CT Page 5741-cd plaintiff does not have any other minor children. Neither party has received State assistance.
The parties are in dispute as to the cause of the breakdown of the marriage. From the evidence presented, the court finds that the defendant is primarily at fault for the breakdown of the marriage.
The plaintiff was born on December 5, 1960. The plaintiff has completed four years of high school. The defendant has health insurance through his place of employment. The cost of COBRA benefits for the plaintiff for medical, prescription, dental and hearing coverage will be $195 monthly. The cost of COBRA benefits for only medical and prescription would be $175 monthly. The plaintiff has been employed throughout the marriage. Between February 1, 1999 and June 18, 1999, she was employed earning $6 hourly. She was also employed as a factory worker earning $5.50 hourly between March 1990 to August 1991 working five days per week at eleven hours per day. She intends to return to work when the children are able to care for themselves. The parties lived in France between April 30, 1992 and September 1993. She was also employed evenings cleaning offices between 1996 and 1998. Her last employer was the Joshua Treehouse in 1999 where she was employed for approximately three months earning a gross of $3,981.80. At the present time, the children are in school from 8:10 a.m. until 2:20 p.m. She has tried to find employment during those hours so she can be home when the children return home from school, but has been unable to do so. The plaintiff is in good health. The plaintiff is presently unemployed.
The defendant was born on April 1, 1956. The defendant has completed four years of high school. The defendant is in good health.
The defendant is employed as a laborer for the Atlantic Pipe Corporation. His gross weekly income is $736. His net weekly income is $596. He shows on an attachment to his financial affidavit rental property that he collects the income for his mother who resides in Portugal. That property is located at 212 Olivia Street, Derby, Connecticut. He transferred the title to that property to his mother in approximately 1989, when both he and the plaintiff filed for bankruptcy. The plaintiff claims that the defendant has a financial interest in the Olivia Street property. From the evidence presented, the Court finds that the defendant does not have a financial interest in that property. The parties own two motor vehicles, a 1993 Chevrolet with a fair market value of $3500 and a 1988 Pontiac with a fair market value of $1800. The defendant also owns an automobile in Portugal that his mother uses that has a fair market value of $400. In addition to the Webster joint bank CT Page 5741-ce account in his name and the plaintiff's name with a total balance of $2,594.37 and the Penn Federal Savings account in both names with a balance of $3869, he also has a separate Webster Bank checking account with a balance of $240.
From all the evidence presented, the court finds that it is in the best interests of the children that the plaintiff be awarded their sole custody.
The parties received a settlement for which they received a net of $31,000 arising out of the death of a fourth child. The plaintiff's financial affidavit shows that she has $3869 in the Penn Federal Savings Bank as trustee for the children. That fund represents the remaining balance from the death claim. She also has $2,594.37 in the Webster Bank. The Webster Bank account was a joint savings account from which the plaintiff withdrew $1500 for attorney's fees.
The $31,000 net wrongful death settlement was received in October 1993 as a result of the wrongful death of their son. In March 1994 the defendant turned over to his half-brother, John Faria, $25,000 from the $31,000 net settlement. The plaintiff believed the $25,000 was to be used to purchase the property located at 416 Sylvan Avenue, Waterbury, Connecticut for the plaintiff and the defendant. She believed that because of the prior bankruptcy of the plaintiff and the defendant, that they could not get a mortgage in their own name and therefore title to the property and the mortgage were to be taken in the name of John Faria. She was not aware of the fact that her husband owed John Faria $25,000 and she never consented to the $25,000 that was turned over to John Faria to be used to repay the debt her husband owed to him. In view of the fact that there still remains a $3869 balance from the wrongful death settlement, it is probable that there would be an additional $25,000 plus interest remaining if the defendant had not used $25,000 to repay his debt to John Faria. In using the $25,000 to repay his debt to John Faria, the defendant failed to preserve a family asset that would have been available for the benefit of both the plaintiff and the defendant at this time.
The parties have reached an agreement marked as Court Exhibit A showing a list of items that the defendant is to receive from the property located at 416 Sylvan Avenue, Waterbury where the plaintiff and the three children presently reside at. The two items that are in dispute involve a diamond ring that the parties found in Paris and some tablecloths and napkins that the defendant claims belong to his mother. The diamond ring in question is a woman's diamond ring. It was found by the defendant who CT Page 5741-cf gave it to the plaintiff. It has a fair market value of $1000. The tablecloths and napkins in question actually consist of sheets that were made out of linen. The defendant's mother gave the plaintiff the sheets in Portugal and the plaintiff had them made into tablecloths in Portugal at a cost of $400. The fair market value of the tablecloths is $400.
The parties entered into a pendente lite agreement on June 19, 2000, that was approved by the court and reads in part as follows:
 Motion #108 — The order of April 3, 2000, shall be modified as follows: The defendant shall pay to the plaintiff the sum of $240 per week as child support and a sum of $100 per week as alimony. The plaintiff shall be responsible for payment on the rent/mortgage, fuel oil, gas, water, cable t.v. and home insurance as of this date (June 19, 2000) and the plaintiff shall transfer these bills to her name.
The defendant has failed to make any of the payments due on the mortgage since the date of that order. The amount due through April 30, 2001, on the mortgage payments amounts to $7,459.64. In the event the plaintiff has failed to make any of the other payments that she was ordered to make since the date the evidence on this matter was completed or in the event the defendant has failed to make the support and/or alimony payments since the date the evidence in this matter was completed, then such arrearages are not merged into the judgment.
This court has considered the provision of § 46b-82 regarding the issue of alimony, and has considered the provision of § 46b-81 (c) regarding the issue of property division, and has considered the provisions of § 46b-56 regarding the issues of custody and visitation, and has considered the provision of § 46b-84 in the Child Support Guidelines regarding the issue of support, and has considered the provision of § 46b-62 regarding the issue of attorney's fees. The court enters the following orders:
 ORDERS
(A) By Way of Dissolution of Marriage
The marriage between the parties is dissolved and each party is declared to be single and unmarried.
(B) By Way of Custody and Visitation
CT Page 5741-cg
(1) Sole custody of the three minor children is awarded to the plaintiff.
(2) The defendant has the right to visit with the children every other Sunday commencing on the second Sunday after this decision is filed from 2:00 p.m. until 6:00 p.m.
(3) The defendant has the right to visit with the children each Christmas Day, Thanksgiving and Easter Sunday from 2:00 p.m. to 6:00 p.m.
(4) Neither party may relocate the children out of the State of Connecticut without court approval.
(5) The defendant has the right to have the children for one (1) week during the summer, with the week commencing on Sunday at noon and ending Sunday at noon. He is to give to the plaintiff not less than ninety (90) days advance written notice by registered mail return receipt or certified mail return receipt of the week that he elects.
(6) The defendant has the right to claim the three minor children as deductions for federal and state income tax purposes for each calendar year for which he is current in his alimony and/or support orders at the end of such calendar year.
(C) By Way of Support
(1) The defendant is ordered to pay to the plaintiff support in the amount of $250 per week. He is also to pay 50% of the un-reimbursed medical for each minor child after the plaintiff has first paid the first $100 in un-reimbursed medical for each minor child. These orders are in substantial compliance with the child support guidelines.
(2) The defendant is to maintain health insurance as available through his place of employment for the benefit of the minor children.
(D) By Way of Property Orders
(1) The defendant is to pay any amount that he owes to John Faria and hold the plaintiff harmless therefrom.
(2) The defendant is to hold the plaintiff harmless from any claims that his mother may make against the plaintiff. CT Page 5741-ch
(3) The 1988 Pontiac is awarded to the plaintiff. The defendant is to transfer title to that vehicle to her within thirty days after this decision is filed
(4) The 1993 Chevrolet is awarded to the defendant.
(5) The car that the defendant owns in Portugal is awarded to the defendant.
(6) The Webster Bank account held in joint names is ordered divided equally between the parties.
(7) The Penn Federal Savings account held in both parties' names is awarded to the plaintiff.
(8) The Webster Bank checking account shown on the defendant's financial affidavit with a balance of $240 is awarded to the defendant.
(9) The diamond ring as well as the table cloth and napkins that are in dispute are all awarded to the plaintiff. The parties reached an agreement marked as court exhibit A, a copy of which is attached hereto regarding the remaining items of personal property and orders are entered in accordance with that agreement.
(10) This court has found in this decision that the plaintiff failed to make mortgage payments regarding the property occupied by her at 416 Sylvan Avenue, Waterbury, Connecticut totaling $7,459.64. The court orders the defendant to pay to the plaintiff as property settlement the total amount of $15,000. From that amount is to be credited $7,459.64 leaving a balance due to the plaintiff of $7,540.36. The defendant is to pay to his half-brother John Faria the $7,459.64 in mortgage payments that the plaintiff failed to make and that were made by John Faria. He is to hold the plaintiff harmless from any claim against her by John Faria for those mortgage payments. The balance due from the defendant to the plaintiff of $7,540.36 is to be paid at the rate of $100 per month commencing June 1, 2001 and on the first day of each month thereafter without interest. In the event any payment is more than ten (10) days in arrears, then the balance due to the plaintiff is to include interest at the rate of 8% per annum.
(E) By Way of Alimony
(1) The defendant is to pay to the plaintiff alimony in the amount of CT Page 5741-ci $100 weekly.
(2) Alimony is to terminate upon the earliest of the following events:
(a) the death of the plaintiff;
(b) the death of the defendant;
(c) the remarriage of the plaintiff;
(d) May 7, 2008, when the youngest child will be fourteen years old and should be old enough to care for himself while the plaintiff is employed. The court finds it is in the best interests of the children that she not have to seek employment until the youngest child is fourteen years old.
(3) The provisions of § 46b-86 (a) and § 46b-86 (b) are applicable. The term of alimony cannot be extended.
(4) The plaintiff has the right to claim COBRA benefits for the maximum period allowed by law under the defendant's health insurance and he is ordered to cooperate in the event she so elects. The cost for such medical, prescription, dental and hearing coverage is to be paid equally by the parties.
(5) The defendant is further ordered to pay to the plaintiff $1 per year as and for alimony for purpose of debt indemnification. The debt indemnification is for the following debts: a) the order that the defendant pay any amount that he owes to John Faria and hold the plaintiff harmless therefrom; b) the order that the defendant hold the plaintiff harmless from any claims that his mother may make against the plaintiff; c) the order that the defendant pay the debt owed by the plaintiff to John Faria in the amount of $7,459.64; d) the debt owed by the defendant to the plaintiff in the amount of $7,540.36; and e) any claims by John Faria against the plaintiff for rent and/or use and occupancy for up to the date this decision is filed.
The $1 per year alimony shall be modifiable only in the event the defendant defaults with respect to any and all of the above debts and for no other reason whatsoever. This $1 per year order shall not be dischargeable in bankruptcy.
(F) By Way of Attorney's Fees
CT Page 5741-cj
(1) No attorney's fees are awarded in favor of either party.
(G) Miscellaneous Orders
(1) Counsel for the plaintiff is to prepare the judgment file within thirty days and send it to counsel for the defendant for signature and filing.
(2) The parties are to exchange copies of their federal and state income tax returns by certified mail return receipt or registered mail return receipt within thirty days after such returns have been filed for so long as there is an outstanding alimony order and/or an outstanding support order or any outstanding arrearage regarding either or both orders.
(3) An immediate wage execution is authorized for the support and alimony orders entered herein.
(4) Any pendente lite arrearages existing on the date this decision is filed are not merged into the judgment.
AXELROD, J.